UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHIRLEY A. JOHNSON,<br><br>     Plaintiff,<br><br> v.<br><br>AIR & LIQUID SYSTEMS<br>CORPORATION, et al.,<br><br>     Defendants. | CASE NO. 2:24-cv-00491-LK<br><br>ORDER GRANTING<br>DEFENDANTS' MOTIONS FOR<br>SUMMARY JUDGMENT;<br>DENYING PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT;<br>GRANTING IN PART AND<br>DENYING IN PART MOTIONS TO<br>EXCLUDE |

This matter comes before the Court on Defendants Puget Sound Commerce Center's and Lockheed Shipbuilding Company's motions for summary judgment, Dkt. Nos. 103, 109, and on Plaintiff Shirley Johnson's cross-motion for partial summary judgment, Dkt. No. 127. Lockheed and Puget Sound Commerce Center also filed motions to exclude two of Plaintiff's experts. Dkt. Nos. 99, 101, 105. For the reasons set forth below, the Court grants Defendants' motions for summary judgment, denies Johnson's motion for partial summary judgment, and grants in part and denies in part the motions to exclude.[1]

---

[1] Because the motions can be decided based on the parties' filings, the Court denies Defendants' requests for oral argument. Dkt. No. 103 at 1; Dkt. No. 109 at 1.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 1

# I.    BACKGROUND

This matter arises from the mesothelioma-related death of Lonnie "Bill" Stubblefield, Jr. Shirley Johnson, individually and on behalf of Stubblefield's estate, claims that Defendants Puget Sound Commerce Center and Lockheed Shipbuilding Company were negligent in failing to provide a safe workplace that was free of asbestos when Stubblefield worked at those shipyards in the 1970s and 1980s. Dkt. No. 84 at 1–5.

## A.    History of Asbestos in the Ship Building Industry

Asbestos was prohibited in new construction in 1974. Dkt. No. 128 at 665. Still, vessels built before 1974 continued to have asbestos-containing insulation materials installed on board until a need arose to remove them. *Id.* For that reason, "there were still asbestos installed aboard ships that were operating both in the U.S. flag merchant fleet as well as commissioned U.S. Navy ships in the '70s, '80s, when [Stubblefield] was working for Crosby & Overton." *Id.* at 670. However, even before 1974, the Navy used some "nonasbestos-containing materials" in its vessels and started a "phase-out of certain insulants" beginning in the 1950s. *Id.* at 665–66. The Navy required that any removal of asbestos-containing materials aboard its vessels be performed in accordance with Navy rules, regulations, and standards. Dkt. No. 110-8 at 19.

Thermal system insulation is a "friable" material, meaning that working with it "will easily release asbestos into the air." Dkt. No. 121 at 45. As a result, bystanders to those working with asbestos can be exposed to asbestos. *Id.*

## B.    Todd Operated a Shipyard Where Asbestos Was Present

Defendant Puget Sound Commerce Center, also known as Todd Shipyard ("Todd"), is "a shipbuilding/ship repair organization" that relied on both its own employees and subcontractors to perform its work. Dkt. No. 128 at 286. During the 1970s and '80s, the time period relevant to this case, Todd hired outside contractors through the ship scalers union to perform "general cleanup,"

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 2

needle-gunning to prepare ship surfaces for painting, and tank and bilge cleaning. *Id.* at 306, 308. Todd understood that it was responsible for ensuring that its subcontractors were performing their designated jobs safely. *Id.* at 341.

From 1977 through the mid-1980s, Todd was building frigates for the Navy and ferries for the State of Washington. *Id.* at 310. In approximately 1985, Todd won a contract to overhaul eight Coast Guard cutters, and that work lasted until the 1990s. *Id.* Todd repaired both government and commercial vessels during this time period, and generally, "[i]t would not be uncommon" for such vessels built before 1970 or 1971—which predated federal safety requirements specified by the federal Occupational Safety and Health Administration ("OSHA")—to contain asbestos. *Id.* at 310–11; *see also id.* at 312 ("for the most part, major repairs and overhauls would be on older vessels" during the '70s and '80s).

Because Stubblefield died before this case was filed, much of the evidence about the work he performed comes from his brother and co-worker, Robert Stubblefield. *See, e.g.*, Dkt. No. 121 at 581.[2] According to Robert, Stubblefield worked on "preservation" of the vessel the David R. Ray at Todd. Dkt. No. 110-6 at 12.[3] That vessel appears in a list as containing asbestos thermal insulation. Dkt. No. 128 at 414–15.

Todd did not hire laborers like Stubblefield to install or remove asbestos. Dkt. No. 128 at 309. Still, asbestos abatement work was performed at the shipyard "through the '70s and '80s," so if laborers were present while that work was being performed, it is possible "[t]hat they could have been exposed to an area in which asbestos work was being accomplished." *Id.* According to a 1973 memorandum, Todd and its employees were responsible for the primary management of asbestos

---

[2] This Order refers to Robert Stubblefield as "Robert" to differentiate the brothers, but implies no disrespect by referring to him by his first name.

[3] Johnson's combined response to the motions for summary judgment avers that *Lockheed* constructed and repaired the David R. Ray. Dkt. No. 127 at 31–32.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 3

dust control procedures at the shipyard. *Id.* at 319–20. By 1976, Todd knew that asbestos could cause death, *id.* at 294, although the "prevailing view among experts" in the '70s and '80s about whether there was a safe level of exposure was different than the prevailing view today, *id.* at 326–27.

**C.    Lockheed Operated a Shipyard Where Asbestos Was Present**

Like Todd, Lockheed operated shipyards in Seattle during the relevant time, worked on government vessels, and supplemented its workforce with subcontractors. Dkt. No. 128 at 396. Navy vessels the Oldendorf and the David S. Ray were serviced at Lockheed in the early 1980s. *See id.* at 119–32; Dkt. No. 104-5 at 8; Dkt. No. 110-7 at 8, 11. As of 1979, both the David R. Ray and the Oldendorf were listed as containing asbestos thermal insulation. Dkt. No. 128 at 414–15. The Coast Guard icebreakers the Polar Star and Polar Sea contained "some insulating material containing asbestos," and the Navy vessel USS Roark likely did as well. Dkt. No. 110-7 at 9; *see also* Dkt. No. 104-5 at 9. The Polar Star "was delivered just as . . . Stubblefield started working for Crosby and Overton, Inc. in January 1976," Dkt. No. 110-7 at 9, and the Polar Sea was at Lockheed around June 1980, Dkt. No. 128 at 139–43.

Lockheed acknowledges that it is "likely" some of the older ships that came into the shipyard in the 1970s and '80s contained asbestos insulation. *Id.* at 423. During the time that Stubblefield worked at Lockheed, "if the asbestos was going to be exposed and it wasn't encapsulated and safe, then it had to be done in a specially contained area[.]" *Id.* at 433. Workers allowed inside those designated areas had to be certified and wear personal protective equipment provided by their employer, and other employees were excluded from the area when "asbestos-containing material was exposed." *Id.* Johnson contests whether Lockheed and its workers always followed this guidance. *See, e.g.*, Dkt. No. 127 at 37–39.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 4

**D.    Stubblefield Worked at Todd and Lockheed Shipyards**

During the relevant time, Stubblefield was employed by Crosby & Overton, a marine-services contractor, where he worked as a laborer. Dkt. No. 84 at 3. Specifically, Stubblefield worked for Crosby & Overton from 1976 through 1982, and again from 1985 through 1989. Dkt. No. 104-4 at 6. From August 1978 through October 1981, he was employed as a ship scaler performing "marine cleanup." *Id.* Stubblefield worked approximately 60 percent or more of his time with Crosby & Overton at Todd, Lockheed, and Lake Union Drydock shipyards. Dkt. No. 121 at 582. He was also employed directly by Todd as a ship scaler from December 11, 1981 through March 22, 1982. Dkt. No. 104-4 at 6.

Stubblefield typically worked alongside Robert when he worked at Todd's and Lockheed's shipyards. Dkt. No. 121 at 581. The brothers worked at the shipyards in the engine rooms on projects that lasted "anywhere from one month to five or six months." *Id.* at 582. Before they entered tanks, a marine chemist tested the air and then told the workers what protective equipment was required, and the brothers always wore respirators as directed by the marine chemist while in the tanks. *Id.* at 366–73. Stubblefield did not work directly with asbestos-containing equipment or materials. Dkt. No. 108-1 at 10.

Instead, Johnson contends that Stubblefield was exposed to asbestos by others' work. When the Stubblefields worked in the engine rooms, "all of the other trades worked above [them]: pipefitters, welders, electricians, carpenters, boilermakers, everybody." Dkt. No. 121 at 582; *see also id.* at 337. The workers above "were working on pipes and equipment, including pumps, and tearing them apart and putting them back together." *Id.* at 582. Robert did not know the identity of the manufacturer of any of the equipment, including the pipes, pumps, parts and components. *Id.* at 475–76. In this setting, they "could sometimes see dust from the work above [them] float down into [their] work area." *Id.* at 582. "This dust came down sometimes in flakes and chunks that

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 5

looked similar to a cast, like you put on a broken arm, when they worked on the pipes." *Id.* There were no barriers around the workers generating this dust. *Id.* Robert states that "[t]his dusty work was the same at Todd[ and] Lockheed[.]" *Id.* "No one from Todd[ or] Lockheed . . . ever told [them that they] would be working around anyone who was removing or disturbing insulation or other products containing asbestos." *Id.* Nor did anyone warn them about the dangers of exposure to asbestos or tell them they needed to wear respirators to protect themselves from asbestos. *Id.*

Robert recalls working on Navy vessels at Lockheed with his brother, including the USS Roark and USS Oldendorf. *Id.* at 586. He also recalls working with his brother on the Polar Sea and Polar Star, but cannot remember if they performed that work at Todd or Lockheed. *Id.* The two worked on Coast Guard cutters at Todd, where Stubblefield worked on tank cleaning while Robert performed needle gunning. *Id.* Robert did not know the ages of the boats they worked on. *Id.* at 337–38. The Roark was present at Lockheed in July 1980 while "going through an overhaul[.]" Dkt. No. 104-5 at 7.

Richard Hepburn, an expert hired by Lockheed and Todd, opines that, "based on [his] experience and expertise, a shipscaler would not have been present in a space where insulation and lagging material containing asbestos was being removed in the 1976 through the late-1980s." Dkt. No. 104-5 at 6. Instead, "[t]he affected spaces were blocked off with plastic sheets, and only personnel wearing proper personal protective equipment (PPE) were allowed in the spaces for insulation removal." *Id.* at 7. Moreover, it was the Navy's policy as of October 1975 "not to install any insulation and lagging material containing asbestos[.]" *Id.* at 6. Christopher Herfel, Todd's other expert, states that "although the majority of the approved high temperature pipe coverings and insulants installed aboard U.S. Navy, U.S. Coast Guard, and U.S. flag merchant cargo ships contained asbestos[] through the mid-to-late 1960s, many other types of non-asbestos containing

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 6

insulants were approved and utilized" for those ships from the 1940s through the 1960s. Dkt. No. 104-4 at 23.

Stubblefield was diagnosed with mesothelioma in November 2022, and he died in December 2022. Dkt. No. 84 at 3. He was not deposed before his death. Dkt. No. 109 at 2.

**E.    Plaintiff Files Suit**

On January 24, 2023, Johnson filed this action in King County Superior Court against 17 Defendants. Dkt. No. 1-2 at 1–2. The original complaint alleged that Stubblefield was exposed to asbestos through his work at Lockheed, Todd, Lake Union Drydock, Tacoma Boat, Weyerhaeuser, and ASARCO. *Id.* at 3. Todd removed this action in April 2024 based on the government contractor defense. *See generally* Dkt. No. 1.

Johnson filed an amended complaint on September 25, 2024. Dkt. No. 84. The amended complaint asserts a claim for negligence. *Id.* at 5. Johnson contends that Todd and Lockheed "were possessors of land, who knew that asbestos was a hazard on their land, knew or should have known about the dangers faced by subcontractors like Mr. Stubblefield, and breached their duties to discover hazardous conditions and take steps to protect invitees, including Mr. Stubblefield." *Id.* Todd and Lockheed filed these motions for summary judgment, Dkt. Nos. 103, 109, and Johnson filed a combined response and cross-motion for partial summary judgment on some of Defendants' affirmative defenses, Dkt. No. 127.[4]

## II.    DISCUSSION

**A.    Jurisdiction**

Even though the Court already denied Johnson's earlier motion to remand, Dkt. No. 68, Johnson again argues that the Court should remand this case back to state court—this time because

---

[4] Although Johnson moved for partial summary judgment against Lake Union Drydock, *see generally id.*, she subsequently settled with that Defendant, Dkt. Nos. 142–43.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 7

(1) she is entitled to summary judgment on Defendants' government contractor defense, which was the basis of removal, so (2) the Court lacks supplemental jurisdiction over her negligence claim. Dkt. No. 127 at 78. In support, she relies on *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), Dkt. No. 139 at 1–2, in which the Supreme Court held that "[w]hen an amendment excises the federal-law claims that enabled removal, the federal court loses its supplemental jurisdiction over the related state-law claims." 604 U.S. at 25–26. That is not the situation here: Johnson has not amended her complaint to remove a federal claim. And because Todd raised a colorable government contractor defense, Dkt. No. 1, it was entitled to remove the case under 28 U.S.C. § 1442(a)(1). *See generally* Dkt. No. 68 (denying motion to remand); *see also DeFiore v. SOC LLC*, 85 F.4th 546, 553 (9th Cir. 2023) (noting that a party removing a case under Section 1442(a)(1) must establish that it can assert a "colorable" government contractor defense).

However, Johnson's amended complaint does change one thing jurisdictionally: it presents a second basis for the Court's jurisdiction. "Section 1367 contemplates that when an amended complaint is filed, the jurisdictional basis for the suit is reviewed anew." *Royal Canin U. S. A., Inc.*, 604 U.S. at 34. In addition, "when a plaintiff voluntarily amends his or her complaint after removal to assert a federal claim, that amendment cures any jurisdictional defect and establishes federal subject-matter jurisdiction." *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1070 (9th Cir. 2019). Not only are the same colorable government contractor defenses available to Defendants after Johnson's amendment, but Johnson has also asserted a claim in admiralty, giving the Court admiralty jurisdiction.

"Article III of the Constitution grants the federal courts jurisdiction over maritime cases." *Air & Liquid Sys. Corp. v. DeVries*, 586 U.S. 446, 451 (2019); *see also* 28 U.S.C. § 1333 (providing that federal courts have "original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to

which they are otherwise entitled."). Federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) exists if conditions "both of location and of connection with maritime activity" are met. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). First, the court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* Second, the court must "assess the general features of the type of incident involved . . . to determine whether the incident has a potentially disruptive impact on maritime commerce," and then "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (citation modified); *see also McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016).[5]

The location test is satisfied if "some portion" of the alleged asbestos exposure occurred on navigable water. *Wineland v. Air & Liquid Sys. Corp.*, 523 F. Supp. 3d 1245, 1250–51 (W.D. Wash. 2021) (quoting *Cabasug v. Crane Co.*, 956 F. Supp.2d 1178, 1187, n. 11 (D. Hawaii 2013)). Vessels docked at a shipyard, including those in drydock, are considered to be in navigable waters. *Id.*; *see also Simmons v. The Steamship Jefferson*, 215 U.S. 130, 142 (1909) ("[W]e think it cannot be held that a ship or vessel employed in navigation and commerce is any the less a maritime subject within the admiralty jurisdiction when, for the purpose of making necessary repairs to fit

---

[5] Before the Supreme Court announced the two-part *Grubart* test, the Ninth Circuit, applying a four-part test, determined in *Myrhan v. Johns-Manville Corp.* that claims for injuries arising out of asbestos exposure during the repair of ships in navigable waters did not fall within federal admiralty jurisdiction. 741 F.2d 1119, 1122 (9th Cir. 1984). "Numerous courts, however, have found that this test and similar tests from other circuits no longer control and have been displaced by the one articulated by the Supreme Court in *Grubart*, 513 U.S. at 534[.]" *Nelson v. Air & Liquid Sys. Corp.*, No. C14-0162JLR, 2014 WL 6982476, at *9 n.8 (W.D. Wash. Dec. 9, 2014). Since *Grubart*, the Ninth Circuit has "taken an inclusive view of what general features of an incident have a potentially disruptive effect on maritime commerce." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1128 (9th Cir. 2009). "Given the analysis of . . . *Grubart*, and the asbestos cases that have followed *Grubart*, the existing rule teaches that claims for injuries incurred in the maintenance and repair of ships necessary to keep them operable while on the seas are subject to federal maritime jurisdiction"; this rule "focuses on the potentially disruptive impact such injuries might have on maritime commerce, and the substantial relationship of this repair work to traditional maritime activity." *Caliliw v. Bd.*, No. CV 11-10708 GAF (JEMx), 2012 WL 13202596, at *7 (C.D. Cal. Mar. 30, 2012).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 9

her for continuance in navigation, she is placed in a dry dock and the water removed from about her, than would be such a vessel if fastened to a wharf in a dry harbor, where, by the natural recession of the water by the ebbing of the tide, she for a time might be upon dry land."); *The Robert W. Parsons,* 191 U.S. 17, 34 (1903) ("[A]s all serious repairs upon the hulls of vessels are made in dry dock, the proposition that such repairs are made on land would practically deprive the admiralty courts of their largest and most important jurisdiction in connection with repairs."); *Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 348 (11th Cir. 1994) (a vessel in dry dock on a navigable waterway is in or on navigable waters for purposes of admiralty jurisdiction); *Cabasug*, 956 F. Supp. 2d at 1187. Here, Johnson alleges that "[d]uring all times relevant to this case, Mr. Stubblefield was employed . . . as a shipscaler and laborer," and worked onboard "civilian and Navy and other government ships at Lockheed Shipbuilding, in Seattle, Washington; [and] Todd Shipyard, in Seattle, Washington[.]" Dkt. No. 84 at 3–4. "During this work, [he] worked with and around asbestos containing insulation materials," and "also worked in close proximity to other trades who would be removing and replacing insulation, gaskets and packing on piping and equipment" as part of their ship repair work. *Id.* at 4. Robert adds that Stubblefield was injured while working on vessels while they were "tied to the pier" at Todd. Dkt. No. 110-6 at 12–13. This part of the test is therefore satisfied.[6]

As for the connection test, "courts have found that asbestos-related injuries suffered by workers on Navy ships have the potential to disrupt maritime commerce." *Wineland*, 523 F. Supp. 3d at 1251 (finding that "[t]he general features of the incident—injury to seaman on navigable

---

[6] The Court further notes that Todd and Lockheed corroborate these facts. Todd asserts that "all of Lonnie's alleged shipyard exposures to asbestos occurred on navigable waters" and have a sufficient connection to maritime activities. Dkt. No. 103 at 6–8. Todd further contends that "every alleged shipyard exposure occurred while repairing commercial or government vessels docked pierside or in drydock at shipyards in the state of Washington." *Id.* at 7 (citing Dkt. No. 104-1 at 16–17). Lockheed also argues that this part of the test is met because the work was performed aboard ships at a shipyard. Dkt. No. 109 at 12–13.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 10

waters—has the potential to impact maritime commerce and has a substantial relationship to traditional maritime activity"); *see also Freeman v. BAE Sys. San Diego Ship Repair Inc.*, No. 22-CV-0934-L-KSC, 2023 WL 5444784, at *2 (S.D. Cal. Aug. 23, 2023) ("[T]he Court finds that deadly exposure to asbestos in shipyards certainly falls under the wide umbrella of activities that have the potential to disrupt commercial maritime activity."). Furthermore, "the routine repair of a vessel in a dry dock on navigable waters bears a significant relationship to a traditional maritime activity such that admiralty jurisdiction attaches." *Sea Vessel, Inc.*, 23 F.3d at 351. This part of the test is also met; Johnson alleges that Stubblefield was injured while performing repair and maintenance work onboard government and commercial vessels docked at the shipyards. Dkt. No. 84 at 3–4; *see also* Dkt. No. 104-1 at 16–17; Dkt. No. 128 at 310 (Todd's customers included commercial and government entities); Dkt. No. 109 at 13; Fed. R. Civ. P. 9(h)(1) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated."); *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1313 (11th Cir. 2020) (because "[a]dmiralty jurisdiction turns on the *facts* and substance of the claims alleged in the complaint," a complaint that "alleges sufficient facts demonstrating that the district court had admiralty subject-matter jurisdiction" suffices to establish admiralty jurisdiction, even where the plaintiff "attempted to disclaim admiralty jurisdiction throughout her complaint").[7] And finally, the Court has "a virtually unflagging obligation" to exercise cases over which it has jurisdiction—and lacks discretion to remand the case—even if the basis for jurisdiction is different than the one that triggered removal of the case. *See, e.g.*, *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006) (citation modified).

---

[7] The Court also notes that Johnson does not dispute the facts relevant to these factors in her responsive briefing. *See generally* Dkt. Nos. 127, 139.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 11

**B.      Motions to Exclude**

   1.   Legal Standard

Under Rule 702, a trial court may exercise discretion to allow expert testimony if the proponent "demonstrates to the court that it is more likely than not that" such testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "is based on sufficient facts or data"; (3) "is the product of reliable principles and methods"; and (4) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). The Court's role at this stage is that of gatekeeper. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

"The relevancy bar is low," demanding only that the expert opinion "logically advances a material aspect of the proposing party's case." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (citation modified). Expert opinion testimony is reliable if the knowledge underlying it "has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (citation omitted). The reliability inquiry "focuses not on what the experts say, or their qualifications, but what basis they have for saying it." *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (citation modified). To aid courts in exercising their gatekeeping role, the Supreme Court has "suggested a non-exclusive and flexible list of factors that a court may consider when determining the reliability of expert testimony," which include the following factors: "(1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Messick*, 747 F.3d at 1197 (citing *Daubert*, 509 U.S. at 592–94).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 12

The district court "may reject testimony that is wholly speculative" but should "not weigh the expert's conclusions or assume a factfinding role." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022). Indeed, "there is no presumption in favor of admission," *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025), and experts relying on their experience as a basis for their opinion must still explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts," *Avery v. City of Seattle*, No. 2:22-CV-00560-LK, 2024 WL 2959541, at *7 (W.D. Wash. June 12, 2024) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). And although *Daubert* "may be harder to apply when the expert testimony is 'experience-based' rather than 'science-based,'" any such difficulty "cannot simply lead to a 'that goes to weight, not admissibility' default"; rather, there is "a strong argument that reliability becomes more, not less, important when the 'experience-based' expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based expert testimony." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020); *see also* Fed. R. Evid. 702 advisory committee's note to 2023 amendment (decisions holding "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility . . . are an incorrect application of Rules 702 and 104(a)").

    2.   <u>The Court Excludes DePasquale's Opinions in Part</u>

    *(a) Background*

Christopher DePasquale, MPH, CIH, is a senior industrial hygienist with True North Environmental Health, LLC. Dkt. No. 121 at 37. He previously worked as a senior industrial hygienist with Compass Environmental, Inc. from 1998 to 2021. *Id.* As an industrial hygienist, DePasquale "conducts industrial hygiene and indoor air quality investigations." *Id.* He is also

responsible for "project design, execution[,] . . . report development[,] . . . research studies, preparation of papers and publications, and quality assurance." *Id.*

DePasquale opines that "Stubblefield would have personally had exposure to asbestos as a bystander to others working with thermal system insulation (TSI) that contained asbestos," and "[b]ystander exposures are widely recognized in the field of industrial hygiene." *Id.* at 45. He notes that although there was no new asbestos being installed on ships by 1976, "Stubblefield and his brother would have been exposed when existing asbestos containing insulation was removed." *Id.* This is because TSI is "friable," and thus it "will easily release asbestos into the air" during the removal process. *Id.*

DePasquale notes that one historical review of ambient airborne asbestos concentrations reported that until the 1970s, "asbestos-containing insulation was used extensively with naval ships"; between the 1930s and 1970s, "30 to 500 tons of asbestos insulation could be used aboard a single warship." *Id.* However, by the 1970s, "[b]ecause of increasing concerns related to asbestos health risks," the amount "had been reduced to between 3 and 50 tons of asbestos." *Id.* He further explains that workers could be exposed to asbestos "when floors [we]re swept of asbestos-containing dust and debris," and when "pipefitters (or other trades) disturbed gaskets and/or packing that contained asbestos," which "would have also contributed to the overall levels of asbestos present on board ships." *Id.* at 49.[8] On the other hand, "asbestos in the gasket and packing materials" would not be released if left "[i]n place and undisturbed[.]" *Id.* at 50.

DePasquale also explains that when Stubblefield "donned an air supplied respirator, and utilized it properly, he likely did not have a significant exposure to asbestos," but "this would only be the case if he used this type of respirator the entire time he was in the vicinity of operations that

---

[8] "A gasket forms a seal between two non-moving surfaces to prevent the leakage of a liquid or a gas." *Id.*

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 14

disturbed asbestos." *Id.* at 53. According to DePasquale, it is unclear whether and to what extent cartridge respirators and dust masks would have offered protection from asbestos-containing dust. *Id.* DePasquale concludes that "it is [his] opinion that Mr. Stubblefield suffered exposure to asbestos from his own work and the work of others in his presence." *Id.* at 54.[9]

   *(b) Analysis*

   Lockheed has moved to exclude DePasquale's opinions, arguing that while he "is qualified to offer opinions about industrial hygiene, he is not permitted to offer speculative opinions unsupported by any evidence or make up facts helpful to Plaintiff's case." Dkt. No. 101 at 1.[10] It contends that although DePasquale's report "offers a lengthy discussion in general terms about asbestos exposure incurred by workers in other vocations and performing other, different work tasks aboard ships," his report does not offer opinions specific to Stubblefield's work and thus lacks a proper foundation. *Id.* at 5–6. Lockheed argues that DePasquale did not identify any specific vessel on which Stubblefield worked, review any information about the specifications for those vessels, or identify "whether the existing insulation aboard those vessels contained asbestos when [Stubblefield] performed work at Lockheed Shipbuilding's premises." *Id.* at 5. According to Lockheed, DePasquale's opinion that Stubblefield was exposed to asbestos at its premises is not helpful to the trier of fact because "it is not based on any competent or foundationally supported evidence" of exposure at that shipyard, and there is no evidence to support the notion that Stubblefield's working conditions at Lockheed were the same as those present in the general

---

[9] DePasquale provided a supplemental report after he received the declaration of Michael Harris and documents evaluating asbestos controls at Mare Island Naval Shipyard between 1976 and 1978. *Id.* at 589. Those additional materials did not alter the opinions in his original report. *Id.*

[10] The Court does not consider Lockheed's factual assertions that are unaccompanied by citation to the record in violation of Local Civil Rule 7(b)(1). *See, e.g.*, Dkt. No. 101 at 8–10. The Court further notes that it is not helpful—or consistent with Rule 7(b)(1)—to include citations only in a statement of facts, but not in the corresponding argument. *Compare id.* at 2–6 *with id.* at 8–10.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 15

studies DePasquale discusses in his report. *Id.* at 9–10; *see also id.* at 10 ("Any probative value that might be gleaned from his discussion of those studies, if any, would be substantially outweighed by the danger of confusing the jury and unfair prejudice to Lockheed[.]"). In a similar vein, Lockheed argues that DePasquale's opinions lack sound methodology because he did not consider which specific ships Stubblefield worked on or whether he was exposed to asbestos aboard those vessels. *Id.* at 5, 10–11.

Todd has filed a combined motion to exclude both of Johnson's experts. Dkt. No. 105. Todd argues that DePasquale cannot reliably opine that Stubblefield was exposed to asbestos because "there is no factual evidence that would permit Mr. DePasquale to offer an opinion about any actual activity performed by Mr. Stubblefield (or others around him) that involved disturbing asbestos containing materials at Todd." *Id.* at 4. Nor could he opine about "how frequently Mr. Stubblefield may have been in proximity to others working with asbestos-containing materials, or how long the duration of any exposure may have been." *Id.* (citing Dkt. No. 108-1 at 21–22). Todd also argues that DePasquale's opinions should be excluded under Rule 403 because they are based on inadmissible evidence and will thus mislead the jury. *Id.* at 9.

Johnson responds that Defendants' motions ignore the "uncontroverted eye-witness testimony placing Stubblefield" in work environments "while other trades disturbed asbestos-containing materials contaminating his workspace with massive amounts of asbestos dust." Dkt. No. 120 at 2. However, as set forth more fully below, neither the cited testimony nor the record as a whole supports that factual assertion. Instead of articulating a reliable methodology, DePasquale assumed that the insulation Stubblefield worked around contained asbestos. Dkt. No. 121 at 45. Although he notes that "asbestos-containing insulation was used extensively with naval ships" until the late 1970s, *id.*, he does not opine that the specific vessels upon which Stubblefield worked contained asbestos-containing insulation or that such insulation was disturbed in his presence. To

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 16

the contrary, DePasquale has not reviewed any specifications related to the thermal insulation for any of the vessels on which Stubblefield worked. Dkt. No. 108-1 at 21–22. DePasquale's assumptions and exposure opinion are therefore the kind of impermissible *ipse dixit* routinely excluded under *Daubert*. *See Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (citation modified)); *see also, e.g.*, *Robertson v. Carrier Corp.*, No. 2:09-64068-ER, 2012 WL 2989174, at *1 (E.D. Pa. June 25, 2012) (excluding opinion as "not supported by personal knowledge or scientific/ technical/specialized knowledge or expertise" where expert based his opinion that the plaintiff was exposed to asbestos by the gaskets at issue in the case on "market share statistics from 1989 (at which time 50% of the gaskets on the market contained asbestos[)]" and his own conclusion that "'the majority' of engine gaskets during a 40–year period contained asbestos"). The Court therefore excludes DePasquale's exposure-related opinion because it lacks an adequate foundation or methodology to conclude that Stubblefield was exposed to asbestos at Defendants' shipyards.

Despite DePasquale's sweeping opinion that Stubblefield "suffered exposure to asbestos from his own work and the work of others in his presence," Dkt. No. 121 at 54, Johnson argues that DePasquale does not purport to "offer any specific opinions about Lockheed," and instead opines about exposure risks in the shipbuilding industry generally and the range of asbestos Stubblefield might have encountered. Dkt. No. 119 at 4–5, 7–8. Johnson notes that DePasquale relies on historical and general industry data to "evaluate[] the likely ranges of exposures Stubblefield faced from his analysis of the work activities[.]" *Id.* at 5. But these general opinions about the range of asbestos Stubblefield could have been exposed to—*if* the materials he worked around contained asbestos—are not helpful to the trier of fact because they are untethered to Stubblefield's specific work locations. With respect to Johnson's contention that former Lockheed

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 17

employee Michael Harris "corroborates [her] claims," *id.*at 2, 5, the Court disagrees. Harris' declaration states in a conclusory manner that "[w]e knew the material around us was asbestos," and that the dust around him and his coworkers "would be a mix of asbestos dust and other debris," Dkt. No. 121 at 594, without identifying a basis for these statements. Harris also states that "[a]fter asbestos insulation was removed, scalers employed by Lockheed came in with air hoses to blow down dust and debris" but ultimately just moved the dust around. *Id.* This statement does not identify when in the three decades Harris worked at the shipyards this practice occurred, or whether Stubblefield was working at the same shipyard—or on the same ship—when that occurred. *See generally id.* at 590–95. Consequently, Johnson's arguments do not salvage DePasquale's opinions.

DePasquale's opinions about asbestos exposure risks in the shipbuilding industry generally also run afoul of Rule 403 because, as Lockheed notes, his opinion about "workers being exposed to asbestos at other jobsites is irrelevant unless the jury speculates that the insulation aboard the unidentified ships on which the decedent allegedly worked contained asbestos—a proposition for which Plaintiff has identified no competent evidence." Dkt. No. 130 at 4.

Finally, Defendants do not move to exclude DePasquale's opinions that (1) asbestos is friable, so bystanders can be exposed if others are working nearby with asbestos-containing materials; (2) if left "[i]n place and undisturbed[,] the asbestos in the gasket and packing materials are not released from the material"; and (3) "[w]hile Mr. Stubblefield donned an air supplied respirator, and utilized it properly, he likely did not have a significant exposure to asbestos," but the respirator would offer no protection if he took if off. Dkt. No. 121 at 45, 50, 53. The Court thus does not exclude his opinions on these issues.

For these reasons, the Court grants in part and denies in part the motions to exclude DePasquale's opinions.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 18

3.   The Court Excludes Dr. Haber's Opinions in Part

(a) Background

Dr. Stephen Haber is board certified in internal medicine and pulmonary diseases. Dkt. No. 121 at 5. He has practiced for more than 30 years in these fields and during that time, he has diagnosed and managed the care of numerous patients with mesothelioma. *Id.* at 5–6.

Dr. Haber opines that "[a]sbestos is a well-known cause of malignant mesothelioma." *Id.* at 14. "There is no established threshold of asbestos exposure below which there is no risk for malignant mesothelioma and studies demonstrate that mesothelioma may be related to brief, low level, or indirect exposures to asbestos." *Id.* at 6. In general, the higher the dose, the higher the risk, although susceptibility to the disease varies significantly among individuals. *Id.* at 7.

Dr. Haber further opines that "[v]isible dust from asbestos-containing products contains large numbers of asbestos fibers that greatly exceed background ambient levels." *Id.* As for specific causation in this case, he concludes that "the work locations that were significant and substantial factors in the development of [Stubblefield's] mesothelioma included Todd Shipyard, Lockheed Shipyard, Lake Union Drydock, and St. Regis/Simpson paper mill." *Id.* His causation opinions "remain unchanged even if Mr. Stubblefield had sometimes worn a cartridge respirator, fresh air mask, or paper mask" while working. *Id.* at 8. Dr. Huber bases his opinions on a review of Stubblefield's medical records, his death certificate, records from the Social Security Administration, Robert's deposition transcript and declarations, and the "Complaint and Answers to Interrogatories." *Id.* at 8.

(b) Analysis

Lockheed moves to exclude Dr. Haber's opinions as unreliable. Dkt. No. 99 at 1. It argues that Dr. Haber's opinions are "not grounded in relevant facts and data," "devoid of any actual established facts," and "not based on reliable principles and methods." *Id.* at 6.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 19

Specifically, Lockheed moves to exclude Dr. Haber's opinion that "(b)ased on the information provided, the work locations that were significant and substantial factors in the development of [Stubblefield's] mesothelioma included . . . Lockheed Shipyard[.]" *Id.* at 2 (citing Dkt. No. 121 at 7). Lockheed argues that Dr. Haber's opinion that Stubblefield's mesothelioma was caused by exposure at the shipyards is not grounded in specific facts because he does not know what ships Stubblefield worked on, *id.*, and thus his opinion is "predicated upon an improper 'every exposure' or 'cumulative exposure' theory which is unreliable and unscientific," *id.* at 1. And finally, Lockheed asserts that Dr. Haber's opinions are irrelevant and will mislead the jury about the proper causation standard, so they must be excluded under Rule 403. Dkt. No. 99 at 11–12.[11]

Todd also moves to exclude Dr. Haber's opinions for essentially the same reasons. Dkt. No. 105 at 4. In particular, it contends that Dr. Haber "made no attempt to quantify an exposure to asbestos for Mr. Stubblefield at any of the shipyards where he worked," he made no "attempt to determine the intensity of exposure, the duration of exposure, the frequency of Mr. Stubblefield's exposure or his alleged proximity to it," and he did not "attempt to quantify a particular exposure to a particular defendant." *Id.* at 4.

Johnson responds that Dr. Haber should be permitted to opine generally that engineering spaces are "well-described for risk of exposure." Dkt. No. 118 at 7; *see also* Dkt. No. 121 at 17 (Dr. Haber noting the "widespread use of asbestos in marine construction"). As Lockheed argues, this opinion "relies on information about shipyard work in general and simply assumes that the conditions presented in [various] studies—at other locations and time periods—were the same conditions involved in the decedent's work." Dkt. No. 131 at 1. Offering mere generalities about

---

[11] Lockheed further contends that Dr. Haber's opinions are premised on "the unfounded, improper, and inadmissible opinions of Plaintiff's industrial hygienist, Christopher DePasquale, creating a layered *ipse dixit* paradigm of speculative opinions by Plaintiff's experts[.]" *Id.* at 1. However, as Johnson points out, Dr. Haber does not base his opinions on DePasquale's opinions. Dkt. No. 118 at 7; *see generally* Dkt. No. 121.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 20

the presence of asbestos in some engineering spaces on some ships—or in the marine construction industry generally—do not constitute a reliable method to show that Stubblefield was exposed to asbestos at Todd or Lockheed. Furthermore, the opinions could mislead jurors into thinking that they are permitted to conclude that Stubblefield was exposed at Defendants' shipyards based on abstract propositions regarding the general prevalence of asbestos use in shipyards. The Court thus also excludes this portion of Dr. Haber's opinions under Federal Rule of Evidence 403.

Johnson seeks to defend Dr. Haber's opinion by pointing to his assertion that when workers can observe "visible dust from asbestos containing products or materials," there are "substantial amounts of asbestos fibers" in the air that "greatly exceed background ambient levels." Dkt. No. 118 at 7 (quoting Dkt. No. 121 at 18). She argues that "eyewitness testimony . . . places Stubblefield at Lockheed for significant periods of time in work environments associated with high levels of asbestos exposures," and this testimony undergirds Dr. Haber's opinion that exposure at Todd and Lockheed were significant and substantial factors in causing Stubblefield's mesothelioma. Dkt. No. 120 at 8. However, Dr. Haber's visible dust and ultimate causation opinions, Dkt. No. 121 at 7, 18, lack a reliable foundation because there is no evidence in the record that workers observed dust "from asbestos containing products or materials," Dkt. No. 120 at 7. As set forth more fully below, Johnson's purported eyewitness "evidence" on that issue does not establish that the dust that workers observed actually contained asbestos. *See* Dkt. No. 131 at 3 (Lockheed arguing that "Plaintiff fails to explain how the mere observation of dusty air can be a reliable basis for assessing intensity when Dr. Haber cannot identify any information about how much, if any, asbestos the decedent would have been exposed to in the circumstances described by Robert"); Dkt. No. 129 at 2 (Todd arguing the same). And Haber does not purport to draw from any of his own investigation into the particular ships onboard which Stubblefield worked. *See* Dkt. No. 100-2 at 24 (Haber testifying that he "ha[s] not been provided with any information on any

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 21

particular vessel that [Stubblefield] worked on as to the presence or absence of asbestos[.]"). The Court therefore excludes these opinions as unreliable. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 857 (9th Cir. 2019) (experts' assumption that asbestos exposure occurred could not create a dispute of material fact where the assumption was unsupported by any "evidence about exactly what happened at the [alleged location of the exposure] in the [relevant years]").

Dr. Haber also notes that Stubblefield's medical records describe his disease course and diagnosis, and his death certificate attributes his death to mesothelioma. Dkt. No. 121 at 8–12. Defendants have not moved to exclude these opinions, and the Court does not do so. However, the Court agrees with Lockheed that Dr. Haber cannot rely on these records to attribute Stubblefield's exposure or disease to a particular shipyard. *See* Dkt. No. 131 at 5. None of the authors of these records have a foundation to opine about the source of the exposure, so to the extent Dr. Haber relies on the medical records and/or death certificate to establish that source, he has not used a reliable methodology.

The Court also excludes as unreliable Dr. Haber's opinion that any/every exposure to asbestos substantially caused Stubblefield's mesothelioma. Specifically, he opines that "[d]uring the period in which asbestos materials were still present at the shipyards or pulp and paper mills where he worked, Mr. Lonnie Stubblefield's exposures to asbestos would have increased his cumulative dose and would have been a substantial contributing factor in the development of his mesothelioma." Dkt. No. 121 at 7. This opinion falls into the category of opinions "often referred to as 'each and every exposure theory,' 'any exposure theory,' 'the single fiber theory,' or 'no safe level of exposure theory' among others." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 672 (7th Cir. 2017). These theories posit that "any exposure to asbestos fibers whatsoever, regardless of the amount of fibers or length of exposure constitutes an underlying cause of injury." *Id.* A variation of the "every exposure" theory states that "every exposure to asbestos above a threshold level is

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 22

necessarily a substantial factor in the contraction of asbestos-related diseases." *McIndoe*, 817 F.3d at 1177. Related is the "cumulative exposure" theory, which proposes that the cumulative exposure to asbestos is the cause of the disease, but because each exposure, no matter how small, adds to that cumulative exposure, each exposure becomes a substantial contributing factor. *See Krik*, 870 F.3d at 672–73. Courts in this district have "agreed with the overwhelming precedent that the 'every exposure' theory is unreliable because it is not tied to the severity of exposure, is not based on sufficient supporting facts and data, cannot be tested, and does not have a known error rate." *Jack v. Borg-Warner Morse TEC LLC*, No. C17-0537JLR, 2018 WL 3819027, at *10 (W.D. Wash. Aug. 10, 2018) (citation modified), *aff'd sub nom. Jack v. DCo, LLC*, 837 F. App'x 421 (9th Cir. 2021); *see also Barabin v. Scapa Dryer Fabrics, Inc.*, No. C07-1454JLR, 2018 WL 840147, at *11–16 (W.D. Wash. Feb. 12, 2018). They have also held that the "cumulative exposure" theory "is unreliable because it contains the same reliability problems that the 'every exposure' theory does—namely that every exposure becomes a substantial factor based on one fact alone: that it was part of the total dose." *Jack*, 2018 WL 3819027, at *10 (citation modified). This Court agrees with these opinions.

Although Johnson agrees that "'every exposure' opinions are inadmissible," Dkt. No. 118 at 9, she argues that Dr. Haber is not opining that "every contributing exposure will be a *substantial factor* in causing mesothelioma," *id.* at 10. Rather, she argues, Dr. Haber is opining generally "about how asbestos diseases work," and these opinions "are supported by multiple scientific studies and the Environmental Protection Agency, sources which Lockheed does not challenge." *Id.* at 9. She contends that Dr. Haber, as a medical professional, is qualified to opine about these "irrefutable scientific facts." *Id.* (quoting *Jack*, 2018 WL 3819027, at *16). However, Dr. Haber's opinion that Stubblefield's "cumulative dose" from all exposures "would have been a substantial contributing factor in the development of his mesothelioma," Dkt. No. 121 at 7, is an impermissible

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 23

"every exposure" opinion. *See Jack*, 2018 WL 3819027, at \*10; *see also Barabin*, 2018 WL 840147, at \*11–16. The Court therefore excludes that opinion. At the same time, the Court agrees with Johnson that Dr. Haber can opine generally that every exposure adds to the total dose and that the threshold level for developing mesothelioma is unknown. *See, e.g.*, *Jack*, 2018 WL 3819027, at \*16 ("The fact that every exposure adds to the total dose is an 'irrefutable scientific fact,' and it is 'well-established' that the threshold level for developing mesothelioma is unknown." (citation omitted)). That is, experts can opine about "certain fundamental scientific facts . . . even if those facts do not themselves establish legal (substantial factor) causation." *Id.* (citation omitted). Therefore, Dr. Haber can opine about these scientific facts—but not about what Lockheed describes as the "subsequent steps" in his opinion that "connect that opinion to his conclusion that the decedent had significant exposures" at the Defendants' shipyards. Dkt. No. 131 at 2. The Court thus grants in part and denies in part the motions to exclude Dr. Haber's opinions.

## C.    Issues Applicable to Motions for Summary Judgment

### 1.  Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When parties file simultaneous cross-motions for summary judgment on the same claim, the Court "must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also*

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 24

*Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (the district court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard" (citation modified)). The Court "giv[es] the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). However, to the extent the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the movant has made such a showing, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation modified). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89. Nor is it the Court's job to "scour the record in search of a genuine issue of triable fact"; rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 25

## 2.  Plaintiff Does Not Allege a Strict Liability Claim

Todd and Lockheed argue that Johnson's strict liability claim fails as a matter of law. Dkt. No. 103 at 8; Dkt. No. 109 at 14–16. They argue that a ship is not a product under maritime law, and strict products liability is thus inapplicable. Dkt. No. 103 at 8; Dkt. No. 109 at 14–16.

Johnson responds that she is not asserting a strict liability claim based on a product; rather, she is asserting a premises liability claim. *See* Dkt. No. 127 at 5.[12] Therefore, as set forth below, the Court considers Johnson's claim based on a theory of negligence rather than strict liability. *See McIndoe*, 817 F.3d at 1174 (holding that plaintiff "cannot sustain an action for strict products liability premised upon the notion that the warships in question are themselves 'products' under maritime law").

## 3.  Maritime Law Applies

The satisfaction of the same two factors that establish admiralty jurisdiction, discussed above, also shows that maritime law applies to this case. *See, e.g.*, *Wineland*, 523 F. Supp. 3d at 1250–51. "When a federal court decides a maritime case, it acts as a federal 'common law court,' much as state courts do in state common-law cases." *Devries*, 586 U.S. at 452 (citation omitted). "Subject to direction from Congress, the federal courts fashion federal maritime law," and in doing so, they "may examine, among other sources, judicial opinions, legislation, treatises, and scholarly writings." *Id. see also E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 865 (1986) (Federal maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."). Even when maritime law applies, state law may be used to supplement it when the state law is "compatible with substantive maritime policies" and is not

---

[12] The Court notes that Johnson's complaint is not a model of clarity on this point. *See, e.g.*, Dkt. No. 84 at 3 ("Stubblefield . . . was exposed to asbestos and asbestos-containing products that had been mined, manufactured, produced, installed, and/or placed into the stream of commerce by Defendants and/or was exposed to asbestos through the use of products manufactured by Defendants or to products used on Defendants' premises or projects.").

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 26

inconsistent with the substance of federal maritime law. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 207 (1996); *see also Wineland*, 523 F. Supp. 3d at 1251.

Johnson agrees that "maritime law governs proof of exposure and causation; however, [she] disagrees that she has not met her burden on these elements." Dkt. No. 127 at 49. Johnson also relies on state law decisions holding that shipyard owners and operators—as well as general contractors—can be liable for asbestos-related injuries to employees of independent contractors, *id.* at 54, 62–64, and Defendants do not dispute that they can be held liable on this basis, *see generally* Dkt. Nos. 103, 109, 135, 137.

**D.    Todd's Motion for Summary Judgment**

Federal maritime law recognizes the tort of negligence. *See, e.g.*, *Devries*, 586 U.S. at 452. The parties agree on the applicable standard for a negligence claim under maritime law: Johnson must show that Stubblefield was exposed to asbestos in some way that is "attributable" to the Defendant shipyard, and that such exposure was a "substantial contributing factor" in causing his mesothelioma. *McIndoe*, 817 F.3d at 1174; *see also* Dkt. No. 103 at 9 (Todd); Dkt. No. 109 at 16–17 (Lockheed); Dkt. No. 127 at 49–50 (Johnson). Although the parties agree on the applicable standards, they dispute whether Johnson has met them.

1.    Exposure to Asbestos Attributable to Todd

Todd argues that "[t]here is no admissible evidence that any insulation disturbed in Lonnie's presence contained asbestos." Dkt. No. 103 at 11. According to Todd,

> [t]he fact that asbestos may have been used on ships in the mid-20th century for high pressure applications says nothing about whether any of the materials removed or replaced by other trades in the late 1970s and 1980s contained asbestos at the time Lonnie was working aboard unnamed U.S. Navy frigates at Todd.

*Id.* at 10–11. Todd also contends that Robert's testimony that he just "knew" there was asbestos present while the Stubblefields were working under other tradespeople, Dkt. No. 104-1 at 25, "is

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 27

pure speculation and therefore cannot be used as substantive evidence to support Plaintiff's claim," Dkt. No. 103 at 10 (citing Fed. R. Evid. 701; Fed. R. Evid. 602).

Johnson responds that Todd improperly relies on cases involving product liability rather than premises liability. Dkt. No. 127 at 50. She argues that unlike in product liability cases, she "does not need to provide an accounting of [Stubblefield's] exposures from original asbestos products and replacement products" or "establish his proximity to specific, non-friable component parts of equipment[.]" *Id.* at 53. Instead, she contends that a jury could conclude that Stubblefield was "actually exposed to asbestos-containing materials" while working at Defendants' shipyards—and that these exposures were a substantial factor in causing his mesothelioma— because there was a large amount of asbestos dust present at the shipyards while Stubblefield was there. *Id.* at 54.

To prevail on her negligence claim, Johnson must show that Stubblefield's "injuries were caused by exposure to asbestos that was attributable to the ship[yards]' conduct." *McIndoe*, 817 F.3d at 1174. Construing the facts in the light most favorable to Johnson, Stubblefield may have worked on the David R. Ray at Todd, and that vessel contained asbestos thermal insulation. Dkt. No. 110-6 at 12; Dkt. No. 128 at 414–15. Even so (and even if other ships at Todd contained asbestos insulation or other materials while Stubblefield worked at that shipyard), the evidence does not show that Stubblefield was *exposed* to asbestos there. DePasquale opines that bystanders can be exposed to asbestos when others are "working" with asbestos-containing insulation, Dkt. No. 121 at 45, but as set forth below, there is no evidence that others were working with asbestos-containing materials in Stubblefield's presence. And as DePasquale observes, "[i]n place and undisturbed[,] the asbestos in the gasket and packing materials are not released from the material." *Id.* at 50. Further, the "prevalence of asbestos on ships, generally," Dkt. No. 127 at 55, says nothing about whether Stubblefield was exposed when he worked at specific shipyards.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 28

To show such exposure, Johnson argues that "'[m]ore often than not,' on each job Stubblefield worked in 'dusty conditions' created by other trades ripping up insulation above him." *Id.* at 57 (citing Robert's declarations, Dkt. No. 121 at 582, 586). She asserts that "[n]either Lockheed nor PSCC/Todd have controverted Robert's testimony, they only ask the Court not to believe it." *Id.* at 56.[13] But even crediting Robert's declarations and deposition testimony as true, they are insufficient to establish exposure at Todd. Robert offers no facts showing that workers were ripping up insulation (or other materials) above him that *contained asbestos*, or that the dust resulting from their work contained asbestos. *See generally* Dkt. No. 121 at 581–83, 585–87. He states in his declaration that while he and his brother were working in engine rooms, other trades above them were "working on pipes and equipment, including pumps, and tearing them apart and putting them back together," but he does not state that those pipes and equipment included or were insulated with asbestos. *Id.* at 582. Robert also stated in his deposition that he believes he was exposed to asbestos because there were

> pipefitters up there taking apart a pipe . . . [who would] have to pull off the insulation of that pipe, you know. Sometimes it would come straight off, but sometimes they had to kind of break it apart and stuff like that. And with all the lighting that is in the engine room, you always seen something dusty or sort of floating in the air at all times.

*Id.* at 487. However, he does not tie that memory to any particular ship, much less to one that maintained asbestos-containing insulation at the time the Stubblefields worked there. And the pipefitters never stated that they were removing asbestos. *Id.* at 489.

Robert testified that he knew asbestos was used in insulation so he "knew it was there," *id.* at 387, but he does not explain the basis for that belief or his apparent assumption that asbestos

---

[13] Johnson adds that Stubblefield's medical records noted "heavy occupational asbestos exposure history[.]" Dkt. No. 127 at 6. Even if the records are admissible, they do not state that exposure occurred at Todd or Lockheed specifically or show that the treating physicians had any foundation to opine about where the exposure occurred.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 29

was in all the insulation at both shipyards.[14] In contrast, in *McIndoe,* eyewitnesses recalled details about "the removed insulation to such a degree that they c[ould] surmise the age of the insulation." 817 F.3d at 1176. There is no such testimony here. Nor does Robert or anyone else state that all of the insulation on vessels at that time contained asbestos. *Cf.* Dkt. No. 108-2 at 9 (Dr. Haber stating that some insulation materials aboard ships in the 1970s and 1980s did not contain asbestos); Dkt. No. 102-1 at 6 (DePasquale report stating that "[i]n 1976, when Mr. Lonnie Stubblefield began working with Crosby & Overton there should not have been new asbestos [thermal system insulation] installed on ships.").

Johnson also points to Robert's testimony that he observed other workers in protective gear when working with insulation materials at the shipyards. Dkt. No. 127 at 27. However, Robert did not testify about what the workers were doing when he observed them dressed that way. Dkt. No. 121 at 492 ("I didn't know why they w[ere] dressed up like that."). Nor did he recount other important details about what he observed (such as which shipyard they were working in, when, or whether Stubblefield was present at the time). *See id.* Johnson also cites to the deposition testimony of Christopher Herfel, Dkt. No. 127 at 29, but the 114-page transcript she cites includes no page numbers or markings to denote relevant testimony, Dkt. No. 128 at 566–680, in violation of Local Civil Rule 10(e)(6), (10) ("All exhibits must be marked to designate testimony or evidence referred

---

[14] Although Robert notes that he took a "hazmat class" after he stopped working at Crosby & Overton, he does not state that the class covered how to identify asbestos. *Id.* at 583. He also states that he knew asbestos was present because employees from "Corning" were present "and that's what they did," but he does not identify where that asbestos was, the ship on which he was working, or how he learned the nature of those employees' work. *Id.* at 388–89. And in the same deposition, he testified that "Corning" employees told workers there was asbestos present, but later testified that Corning employees did not so state. *Id.* at 389, 393. In addition to the contradictory nature of that testimony, Johnson has not provided any basis for the Court to consider hearsay testimony about what unnamed Corning employees may have told Robert decades ago or how that testimony could be introduced in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *see also* Dkt. No. 135 at 2 (Todd arguing that Robert's supposition that dust equated to asbestos included hearsay); Dkt. No. 137 at 7 (Lockheed arguing that the statements about what Corning employees told Robert are hearsay).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 30

to in the parties' filings.").[15] It is the nonmoving party's job "to identify with reasonable particularity the evidence that precludes summary judgment," and if she elects not to do so, the Court need not "scour the record in search of a genuine issue of triable fact[.]" *Keenan*, 91 F.3d at 1279 (quoting *Richards*, 55 F.3d at 251). Johnson must be held to her burden, as "judges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (citation modified). Consequently, the Court will not scour the record to try to find evidence that Johnson has failed to properly identify.

Other evidence to which Johnson cites is similarly deficient. Johnson argues that Crosby & Overton worker Albert Knight testified that other workers "disturbed insulation and created dust that they breathed." Dkt. No. 127 at 25. Although Knight's cited testimony stated that other employees created dust when they were working, he did not state that the dust contained asbestos. Dkt. No. 128 at 917. Knight also testified that asbestos "was just around" because "anything could break loose[.]" *Id.* at 915. This conclusory assertion is similar that in Harris' declaration, which states that "[w]e knew the material around us was asbestos" and the dust they observed was "a mix of asbestos and other debris," Dkt. No. 121 at 541, without identifying a basis for these statements. *See also* Dkt. No. 128 at 162 (Tom Gemmel stating that workers "knew there was asbestos there" in the engine rooms at Todd, Lockheed, and Lake Union Drydock). Gemmel, Knight, and Harris do not provide any foundation for their speculation that asbestos was present.[16] Nor does Harris or

---

[15] Johnson also filed other lengthy deposition transcripts without page numbers or markings of relevant portions. *See* Dkt. No. 128 at 278–358 (Marsh deposition); *id.* at 368–472 (Blackman deposition); *id.* at 566–680 (Herfel deposition). Additional lengthy and dense exhibits are similarly devoid of the required markings. *See, e.g.*, *id.* at 684–707, 709–34. Johnson has made it even more difficult to find evidence in the record by filing her exhibits in voluminous single filings without separate docket entries in contravention of the CM/ECF User Manual and instructions. *See* Dkt. No. 121 (609 pages of exhibits filed as a single docket entry); Dkt. No. 128 (923 pages of exhibits filed as a single docket entry); U.S. District Court for the Western District of Washington CM/ECF User Manual at 27 (April 2023), *available at* https://www.wawd.uscourts.gov/sites/wawd/files/ECFUserManual.pdf (designating a single exhibit for each attachment).

[16] These lay witnesses do not describe any observable factors that led them to conclude that the insulation contained

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 31

Knight state that Stubblefield was there when asbestos was allegedly present. *See generally* Dkt. No. 121 at 591 (Harris stating that he worked at Todd "briefly" "maybe in the early 1970s" but does not remember specific dates or ships); Dkt. No. 128 at 915–16 (Knight testifying that asbestos was "on the ship, more than likely," without identifying "the ship"). The conclusory statements from Robert and the other lay witnesses that they knew asbestos was present are insufficient to establish exposure. *McIndoe*, 817 F.3d at 1175 n.4.

Moreover, as Todd argues, Dkt. No. 135 at 2, even though Robert and other workers reported seeing dust, Dkt. No. 121 at 582, "dust" does not equal asbestos, *see* Dkt. No. 128 at 640 (Herfel stating that "just because something creates dust does not mean it contains asbestos"). And Johnson does not rebut Herfel's opinion that "the material and chemical composition of thermal insulation products can only be confirmed through laboratory analysis." Dkt. No. 104-4 at 21. She likewise does not rebut his assertion that "both asbestos-containing and asbestos-free calcium silicate thermal insulants were utilized on board U.S. Navy, U.S. Coast Guard, and merchant cargo ships," so "not all dust in a shipyard, including dust that originates from thermal system insulation, contains asbestos." *Id.*; *see also id.* at 23 (noting that Navy, Coast Guard, and merchant cargo ships had "large quantities" of "asbestos-free insulants" during the relevant time).

The record does not support Johnson's other arguments either. She argues that "[t]he asbestos exposures alleged in this case involve 'tremendous' levels of asbestos dust 'in the hundreds of fibers per cc' from insulation and all the dust Stubblefield was exposed to while on Defendant's premises is attributed to them for purposes of evaluating Stubblefield's exposures at each shipyard." Dkt. No. 127 at 54 (citing Dkt. No. 121 at 117). However, the deposition testimony from Dr. Haber to which she cites does not state that asbestos was present at either Todd or

asbestos, and as Herfel notes—and Johnson does not rebut—asbestos-containing and asbestos-free insulation were visibly identical. Dkt. No. 110-8 at 21.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 32

Lockheed. Rather, in the cited testimony, Dr. Haber testified generally that "the literature . . . talk[s] about the risks of the exposure and the types of exposures that one gets from being bystander to removal of existing insulation, for example," and "those exposures can be tremendous in the hundreds of fibers per cc." Dkt. No. 121 at 117.

A plaintiff seeking to establish a negligence claim must "must provide evidence which, while not compelling a finding of liability, does not require speculation or conjecture to establish the elements of the claim." *Wineland*, 523 F. Supp. 3d at 1252. Because Johnson does not offer more than speculative and conclusory allegations regarding exposure, Todd is entitled to summary judgment.

### 2. Substantial Contributing Factor

Even if Johnson were able to show exposure, Todd would still be entitled to summary judgment because Johnson cannot satisfy the second part of the test either. To satisfy part two of the test without direct evidence of causation, Johnson must show that any exposure attributable to the Defendant shipyard "was a *substantial contributing factor*" to his injuries. *McIndoe*, 817 F.3d at 1176 ("Absent direct evidence of causation, a party may satisfy the substantial-factor test by demonstrating that the injured person had substantial exposure to the relevant asbestos for a substantial period of time."). To meet that test, "there must be a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural"; "[e]vidence of only minimal exposure to asbestos is insufficient[.]" *Id.* (citation modified). Applying these standards, the Court in *McIndoe* found insufficient "evidence that McIndoe was 'frequently' present during the removal of insulation aboard [one vessel] and was present 20–30 times during such removal aboard [another vessel]" because, "even if McIndoe was around asbestos dust several times, his heirs presented no evidence regarding the *amount* of exposure to dust from originally installed asbestos, or critically, the *duration* of such exposure during any of

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 33

these incidents." *Id.* The Court explained that "[w]ithout such facts, McIndoe's heirs can only speculate as to the actual extent of his exposure to asbestos from the shipbuilder's materials," which was insufficient to defeat a motion for summary judgment. *Id.* at 1176–77.

Todd argues that Johnson "fails to provide the requisite evidence of Lonnie's length, frequency, proximity and intensity of any exposure to asbestos that might have occurred aboard any ship at Todd," and "[w]ithout this evidence, Plaintiff cannot support her claim." Dkt. No. 103 at 10. In response, Johnson relies on the "dust concentrations associated with the work activities and conditions that Stubblefield worked in." Dkt. No. 127 at 58. Specifically, Johnson argues that "the dust concentrations associated with this work are among the highest reported in the medical literature and are indisputably correlated to a high incidence of asbestos disease among shipyard workers, including bystanders." *Id.* at 59. But to support this proposition, she cites only "generally" to both Haber's and DePasquale's reports. *Id.* Even if such general citations were sufficient, which they are not, the Court grants the motions to exclude these opinions from Dr. Haber and DePasquale as set forth above.

Even if the Court did not exclude DePasquale and Dr. Haber's opinions, they would be insufficient to create an issue of fact here. DePasquale did not perform any calculations regarding the intensity—or the "dose"—of Mr. Stubblefield's alleged exposure. Dkt. No. 108-1 at 16. He did not conduct any air monitoring or industrial health surveys at the shipyards, or review the specifications for the thermal insulation systems aboard any of the vessels Stubblefield worked on. *Id.* at 18, 21–22. Nor does he know how long Stubblefield—without wearing personal protective equipment—may have been in proximity to others removing or manipulating asbestos-containing materials at Todd. *Id.* at 22. Dr. Haber did not quantify Stubblefield's exposure to asbestos at any of the other shipyards either. Dkt. No. 108-2 at 4, 6–7. Nor did he opine about any "particular site" where Stubblefield was exposed except to say, in circular fashion, that "to the extent that there was

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 34

asbestos in the shipyards" where he worked, "then that's where he would have had his occupational exposures." *Id.* at 16. And as Johnson concedes, there was no "contemporaneous air sampling on the ships on which Stubblefield worked, nor any air sampling on similar ships during the same time period." Dkt. No. 127 at 40.

The lay witness evidence on this issue fails to fill these evidentiary holes. As set forth above, none of the lay witnesses state that Stubblefield was present when others were working with asbestos-containing materials, much less opine about "the *amount* of exposure to dust from . . . asbestos, or critically, the *duration* of such exposure during any of these incidents." *McIndoe*, 817 F.3d at 1176. At the summary judgment stage, speculation about those issues is insufficient. *Id.* at 1176–77; *Behrmann v. ABB Inc.*, No. 3:20-cv-05685, 2021 WL 779106, at *3 (W.D. Wash. Mar. 1, 2021) ("Without evidence about the amount of exposure that possibly came from [the specific] products and whether that level of exposure would be medically significant, it would be conjectural to conclude that asbestos-containing . . . products were a substantial factor in causing [plaintiff's] mesothelioma."). Because there is no evidence in the record about the intensity, frequency, or duration of Stubblefield's exposure to asbestos at Todd, Todd is entitled to summary judgment. *See, e.g.*, *McIndoe*, 817 F.3d at 1178; *see also Wineland*, 523 F. Supp. 3d at 1253–54 (granting motion for summary judgment because, "[a]bsent evidence regarding the nature of the hypothetical release" of asbestos, "the type of materials that were mishandled, the duration of the release, and Mr. Wineland's proximity, it is impossible to draw any conclusions regarding the amount or duration of the dust exposure and whether it was a substantial factor in causing Mr. Wineland's injuries"); *Behrmann*, 2021 WL 779106, at *3. Accordingly, the Court grants Todd's motion for summary judgment.[17]

---

[17] Because the Court grants Todd's motion for summary judgment based on the absence of a disputed issue of material

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 35

**E.       Lockheed's Motion for Summary Judgment**

　　　1.   Exposure to Asbestos Attributable to Lockheed

Lockheed argues that it is entitled to summary judgment because Johnson cannot establish that Stubblefield was ever exposed to asbestos on its premises, and therefore, she cannot show that any such exposure was a substantial factor in causing his mesothelioma. Dkt. No. 109 at 1. Specifically, it argues that Johnson "provides no specific allegations as to where, when, how, or to what asbestos-containing materials [Stubblefield] was allegedly exposed on Lockheed Shipbuilding's premises." *Id.* at 17; *see also* Dkt. No. 137 at 1 (arguing that Johnson "offers no evidence of asbestos-containing materials ever being disturbed in decedent Lonnie Stubblefield's presence at defendant Lockheed Shipbuilding Company's . . . premises"). Lockheed contends that although Johnson posits that "asbestos-containing materials were installed on many vessels at Lockheed Shipbuilding's premises," she "has no evidence that [Stubblefield] was ever exposed to airborne asbestos dust from these materials, let alone a specific product." Dkt. No. 109 at 18 (emphasis omitted). Lockheed also argues that the Polar Star, Polar Sea, USS O'Brien, and USS David R. Ray did not contain insulation and lagging material containing asbestos. *Id.* at 10–11.

Johnson responds that "Lockheed hired a subcontractor for asbestos work, including one named Owens Corning," Dkt. No. 127 at 18, but the evidence she cites does not so state, Dkt. No. 128 at 561 (including "Owens/Corning" in a list of Lockheed's "Subcontracts" without specifying what they did or what materials they worked with); Dkt. No. 121 at 539 (Harris noting that "Owens Corning was hired to do insulation" without stating that the insulation included asbestos).

Johnson contests Lockheed's assertion that she has not shown it had any duty to

---

fact regarding exposure and causation, it does not consider Todd's additional arguments that it is entitled to summary judgment based on its affirmative defenses, Dkt. No. 103 at 12–19, or Johnson's request for summary judgment on those defenses, Dkt. No. 127 at 2.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 36

Stubblefield. Dkt. No. 127 at 61. Even assuming for purposes of these motions that Lockheed owed Stubblefield a duty to maintain a safe workplace, as Johnson contends, *id.* at 67, Johnson still must meet the elements of breach and causation, *see, e.g.*, *Wineland*, 523 F. Supp. 3d at 1251, 1253 (assuming a shipyard had a duty to provide a safe workplace under OSHA, plaintiff must still raise "a triable issue of fact regarding a breach of that duty" as well as causation). Johnson argues that Lockheed breached its duty to Stubblefield because it violated OSHA—and analogous state law requirements—when other workers failed to comply with asbestos-related safety requirements. Dkt. No. 127 at 71. In support, she cites generally to Harris's, Gremel's, and Robert's declarations, without specifying any specific sections or statements therein. *Id.* at 71–72. Again, the Court will not scour the record to find evidence to support Johnson's positions. Even reviewing those declarations, as set forth above, none of the lay witness declarants have a foundation to opine that asbestos was present in the dust they saw. In addition, although Harris states that "[a]fter asbestos insulation was removed, scalers employed by Lockheed" would blow the dust around, he does not state when (even by year) or aboard what vessel that occurred, or that Stubblefield was present. Dkt. No. 121 at 541. His statements thus do not show that Stubblefield worked "in an area where [he] might have been exposed" to asbestos. *Wineland*, 523 F. Supp. 3d at 1252. Gremel states that employees "knew there was asbestos there" and that they received no warnings or training, Dkt. No. 128 at 162, but as Lockheed notes, "[w]ithout evidence that the work in question involved asbestos-containing materials, . . . the jury would have no basis to conclude that asbestos-focused safety precautions were applicable" or breached, Dkt. No. 137 at 2; *see also id.* at 10.

Johnson also notes that "Robert recalled working with Stubblefield on the following ships, all of which are confirmed to have been built with asbestos thermal insulation: USS David R. Ray, USS Oldendorf, USS Roark, Polar Sea, and Polar Star." Dkt. No. 127 at 31. Johnson argues that

"all these vessels were present at Lockheed for work during periods of Stubblefield's employment with [Crosby & Overton.]" *Id.* Even assuming that those vessels contained asbestos insulation, as Johnson contends, *id.* at 31–32, evidence that Stubblefield worked on a vessel where asbestos-containing insulation was present is insufficient to raise a genuine issue of material fact regarding exposure. *See, e.g.*, *Cabasug*, 989 F. Supp. 2d at 1037 (noting that "evidence that Cabasug worked on a vessel in which a Defendant's products were present, on its own, is insufficient to raise a genuine issue of material fact that Cabasug was exposed to such products"). As set forth more fully above, just because Stubblefield worked for some unidentified period of time aboard vessels that contained asbestos does not mean that the asbestos was disturbed while he worked at the shipyard or on that vessel. *See, e.g.*, Dkt. No. 121 at 50 (DePasquale explaining that "[i]n place and undisturbed[,] the asbestos in the gasket and packing materials are not released from the material"); *id.* at 45 (opining that bystanders can be exposed if others are "*working with* thermal system insulation . . . that contained asbestos" (emphasis added)).

Finally, Johnson points to documents pertaining to lapses in safety protocols at Lockheed. Dkt. No. 127 at 72–73. For example, in 1979, a subcontractor at Lockheed reported being forced to work on an asbestos-containing boiler and then dispose of the asbestos without proper protection. Dkt. No. 128 at 801–02. In May 1980, Lockheed received a notice of penalty from the Washington Department of Ecology for dumping "asbestos lining into Elliott Bay[.]" *Id.* at 799. As Lockheed argues, Dkt. No. 137 at 10–11, Robert does not contend that Stubblefield worked in dusty conditions created by these incidents. And it cannot be assumed that Stubblefield was present when these incidents occurred, in part because he did not work at Lockheed full time: when he worked for Crosby & Overton, he worked approximately 60 percent or more of his time at Todd, Lockheed, and Lake Union Drydock at various jobs that could last from a day to several months. Dkt. No. 121 at 582 (Robert averring that "[m]y brother Bill worked a similar balance, with likely

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 38

60 percent of his time at the shipyards or more"); Dkt. No. 110-6 at 11 (the length of a job was dependent upon what the job site needed). Johnson also cites "Union Correspondence to Lockheed" to show that "Lockheed turned a 'blind eye' to asbestos safety protocols[.]" Dkt. No. 127 at 72–73. But the correspondence she cites, Dkt. No. 128 at 154–59, says nothing about asbestos, and Johnson does not explain how that hearsay correspondence could be presented in an admissible form at trial.

Because a jury would have to speculate to find that asbestos-containing materials were disturbed in Stubblefield's presence, or that the dust workers observed contained asbestos, Lockheed is entitled to summary judgment. *See, e.g.*, *Wineland*, 523 F. Supp. 3d at 1252–53; *cf.* *McIndoe*, 817 F.3d at 1175 (finding sufficient evidence of exposure to survive summary judgment where a worker stated that he "saw McIndoe in the area of others removing asbestos-containing insulation on 20–30 different occasions" and that "the removal of the insulation created 'large amounts of visible dust' in the air McIndoe breathed").

2. Substantial Contributing Factor

Lockheed argues that Johnson has even less evidence of causation than what the Ninth Circuit found to be insufficient in *McIndoe*. Dkt. No. 109 at 19–20. Here, Johnson "offers only the testimony of Robert Stubblefield, who admits he cannot place Decedent or himself on any specific ship at any specific time." *Id.* at 20. Furthermore, Lockheed contends, the "concentration of any airborne asbestos fibers" the brothers may have encountered "is purely hypothetical." *Id.* Lockheed avers that even if Stubblefield was not wearing respiratory protection at all times, "there is no evidence that [he] was ever in close proximity to any asbestos for any significant amount of time." *Id.* at 21. According to Lockheed, the fact that Stubblefield "*may have* been around asbestos-containing materials at some point during his time as a Crosby employee at Lockheed" is insufficient to demonstrate causation because "admiralty law rejects the notion that plaintiffs can

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 39

prove causation by showing 'the mere presence of the defendant's product in the workplace coupled with "fiber drift" evidence.'" *Id.* (quoting *Cabasug*, 989 F. Supp. 2d at 1036).

Johnson responds with the same arguments and evidence she put forth to support her claims against Todd: she contends that "mesothelioma develops from [individuals'] lifetime exposure to, or dose of, asbestos," and Dr. Haber and DePasquale have opined about the risks of bystander exposure. Dkt. No. 127 at 40. However, as set forth above, the Court has excluded these opinions from Dr. Haber and DePasquale. And their opinions—and Johnson's response and cross motions—assume that "asbestos insulation materials [were] disturbed" in Stubblefield's presence, Dkt. No. 127 at 40, even though the evidence does not support that assumption. All that remains is speculation, which is insufficient to carry Johnson's burden.

In addition, even if Stubblefield had been exposed to asbestos at Lockheed—which Johnson has not shown—Johnson has not presented any evidence "regarding the *amount* of exposure to dust from . . . asbestos, or critically, the *duration* of such exposure during any [alleged exposure] incidents." *McIndoe*, 817 F.3d at 1176. Absent such evidence, Lockheed is entitled to summary judgment.

### III.  CONCLUSION

For the foregoing reasons, the COURT GRANTS Defendants Puget Sound Commerce Center's and Lockheed Shipbuilding Company's motions for summary judgment, Dkt. Nos. 103, 109, DENIES Plaintiff Johnson's cross-motion for partial summary judgment, Dkt. No. 127, and GRANTS IN PART AND DENIES IN PART Defendants' motions to exclude Plaintiff's experts, Dkt. Nos. 99, 101, 105.

Dated this 26th day of January, 2026.

_____
Lauren King
United States District Judge

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE - 40